Betys GREENSPON, Plaintiff,

v.

SUPERMARKETS GENERAL CORP., Defendant.

SUPERMARKETS GENERAL CORP., Third–Party Plaintiff,

v.

NEW JERSEY AUTOMATIC DOOR, INC., and Besam Automatic Doors, Inc., and Mackenzie Group, Inc., Third-Party Defendants.

SUPERMARKETS GENERAL CORP., Third–Party Plaintiff,

v.

DOOR AUTOMATION OF NEW YORK, INC., Third–Party Defendant.

No. 87 Civ. 7029 (RPP).

United States District Court, S.D. New York.

April 10, 1990.

William G. Kral, Kral Clerkin Redmond Ryan Perry & Girvan, Mineola, N.Y., for third-party plaintiff SG.

William J. Manning, Jr., Kenny Stearns & Broderick, New York City, for third-party defendants NJAD and Besam.

Glenn A. Monk, Jones Hirsch Connors & Bull, New York City, for third-party defendant DANY.

David Jaroslawicz, New York City, for plaintiff Greenspon.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

These are motions for summary judgment brought by the third-party defendants against the third-party plaintiff.

Plaintiff Betys Greenspon (Greenspon) brought this tort action to seek damages for injuries allegedly incurred on September 2, 1987 at the Rickel Home Improvement Center located on Route 59 in Monsey, New York (the Monsey store). Plaintiff, a handicapped person, alleges that the injuries resulted after an entrance door closed on her while she was still in the door's path in the entrance corridor. Defendant Supermarkets General Corporation (SG) owns, operates and maintains Rickel Home Improvement Centers (Rickels) in several states, including the Monsey store. SG's submissions do not identify the architect or builder of the Monsey store.

This suit was filed on October 19, 1987 and alleges $1,000,000.00 in damages. On June 22, 1988, SG filed a third-party complaint seeking indemnification and contribution from New Jersey Automatic Door, Inc. (NJAD), a distributor of the type of entrance door in place at the Monsey store; Besam Automatic Doors, Inc. (Besam), a manufacturer of supermarket doors; and the Mackenzie Group, with respect to whom all parties stipulated on October 27, 1989 to discontinue their claims with prejudice. On August 12, 1988, SG filed a second third party complaint seeking indemnification and contribution from Door Automation of New York, Inc. (DANY), a provider of service and maintenance to the doors at the Monsey store. DANY subsequently asserted cross-claims against Besam and NJAD.

Discovery was completed in July, 1989 after several extensions of the original February 13, 1989 deadline set by the Honorable Charles S. Haight, Jr., District Judge for the Southern District of New York. See Order of Oct. 17, 1988. There have been opportunities to depose all parties and, except for NJAD, all parties have been deposed on either one or two occasions. In addition, the parties have responded to all document requests. NJAD, Besam and DANY, respectively, now move for summary judgment against SG pursuant to Federal Rule of Civil Procedure 56.

To grant a motion for summary judgment a court must find that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law because, after sufficient time for discovery, the non-moving party has failed to make a sufficient showing of an essential element of its case as to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At trial SG would have the burden of proving that the third-party defendants had a role in the cause of the accident at the Monsey store. Since there has been extensive discovery, SG must come forward on these motions with "sufficient evidence … for a jury to return a verdict" in its favor; otherwise, "there can be but one reasonable conclusion" from the evidence, and summary judgment must be granted for the moving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Discovery has revealed several facts which pertain to all of the summary judgment motions. The door in which plaintiff claims to have been injured was the second door in an entrance corridor. The door was a Besam Power–Glide Model 3000–V. SG does not dispute that the door was manufactured and installed in or subsequent to February 1, 1981. *See* Besam 3(g) ¶ 7, Ex. I. The door opened by automatically sliding to the right and then closed by sliding back to the left. The opening of the door was activated by an electric eye, a motion detector positioned above the door. The electric eye surveys the field in the front of the doorway and activates the opening of the door whenever there is movement in that area. The door has a programmed cycle which will automatically activate the door to close when the set time period, when no motion has been detected in front of the doorway, has elapsed.

The manager of the Monsey store, Arthur Bamonte, tested the door immediately after the accident and found that the motion detector and the programmed closing cycle were operating properly. Mr. Patrick J. Rogers (Rogers), the manager of store construction and maintenance for Rickels, testified that there was never any indication of a problem with the operation of the

door at the Monsey store. Besam 3(g), Ex. L. Neither before nor after the accident did SG request an adjustment or repair of the motion detector or the closing device. Finally, the report of SG's investigator did not discuss or attribute the cause of the accident to any malfunction in the motion detector or the closing device.[1] Jaroslawicz Aff.Ex. A. The only support which SG cites for attributing the cause of the accident to a "malfunction" in the machinery that was in place is the use of the word "malfunction" in the plaintiff's complaint. Kral Aff. in Opposition to Motion of DANY ¶ 10.

■ The evidence produced by discovery only supports one cause for the accident: the absence of an auxiliary presence sensing device (APSD). If there is no motion in the doorway, then the electric eye will not cause the door to stay open, the programmed cycle will elapse and the door will close. An APSD, such as a light beam (hold-open beam) or floor mat, detects a presence in the doorway and prevents the door from closing as long as that presence is there, regardless of whether there is motion in front of the door. Greenspon is physically disabled and required crutches and leg braces to move through the doorway. Due to her inability to move continuously, the door began to close while she was still in the doorway. Plaintiff claims that if there had been an APSD then the door would not have closed on her. *See* Jaroslawicz Aff.Ex. A.

Section 5.3 of the American National Standards Institute (ANSI) Standards, published in 1979, requires the installation of APSD's when motion detectors are used to activate the opening of a door. Moreover, the policies of SG, Besam, NJAD and DANY reflect a belief that an automatic door activated by a motion detector is unsafe when unaccompanied by an APSD. Rogers of SG testified that it was standard practice for Rickel stores to require the installation of APSD's. McGrath Aff. ¶ 19, Ex. F. Since October 1980, it has been

Besam's practice to include hold-open beams in all automatic door packages. Campbell Aff.Ex. B. In 1980, Besam also held conferences with distributors to inform them of ANSI Standard § 5.3 and sent an additional notice of Section 5.3 to distributors in 1982. Campbell Aff. ¶¶ 9–10, Ex. E, F, G. In 1982, NJAD also sent a notice to its customers which cited the ANSI Standard and "strongly recommend[ed] that you install Hold Open Beams in all automatic doors activated solely by motion detectors." Flock Aff.Ex. A (Oct. 17, 1989). The notice concluded, "If you do not do so, you may incur risk of injury to persons using the doors and of legal liability to such persons." *Id.* Finally, the Operations Manager for DANY, Mr. William McGrath (McGrath), testified that it was DANY's practice to recommend installation of APSD's. Kral Aff. in Opposition to DANY Motion, Ex. B. Thus, the key issue which permeates these motions is whether there is a genuine issue of fact as to whether the absence of an APSD in the automatic door of the Monsey store on September 2, 1987 was the result of a breach of a third-party defendant's duty of care.

### 1. *DANY*

■ The third-party action against DANY is premised upon theories of negligence, breach of contract, breach of warranty and strict liability.

The first basis upon which SG claims DANY had a duty related to the installation of an APSD is a service contract that was in existence from April 1, 1987 through March 31, 1988 between SG and DANY and covered the Monsey store. The contract between SG and DANY required DANY to "inspect, clean, lubricate, adjust, repair or replace worn components" through "two preventive maintenance calls annually" and any additional "service calls" requested by SG. McGrath Aff.Ex. C. There is no evidence that SG ever made a specific call to DANY to request that DANY remedy the absence of an APSD;

---

1. The report does describe the closing speed, but there is not even an innuendo that this may have contributed to the cause of the accident.

Also there is no record or allegation of any service calls from SG requesting an adjustment of the closing speed.

thus, the issue is whether a "preventive maintenance call" encompasses a duty to remedy the absence of an APSD.

The agreement specifically provides for the repair of "inoperative" APSD's; however, there is no reference in the service agreement to a duty to advise the store to purchase an APSD. The standard "Rickel Home Centers Specifications for an Automatic Door Service Contract and Preventive Maintenance Agreement" (the Specifications) further shows that SG entered into the contract without any intention of expecting DANY to make any changes in the door equipment design beyond basic repairs. McGrath Aff.Ex. D. SG provided these Specifications as a basis for DANY's contract proposal. McGrath Aff. ¶ 11.[2] The Specifications state:

> The contractor shall not be required to make any safety test, nor to install new attachments, to alter function or design of equipment under the terms of this Agreement, which may be recommended or directed by insurance companies, the federal government, state or municipal or other authorities.

McGrath Aff.Ex. D. The other provisions of the contract and Specifications do not evince an intent on behalf of either party to have the agreement create a duty related to the installation of an APSD.

■ SG also argues that even if the service contract did not create such a duty, DANY extended its duty beyond the boundaries of the contract. This argument is based upon hearsay testimony by McGrath that a service mechanic at some time, either before or after the accident, recommended the installation of an APSD in the Monsey store. SG contends that the implication of McGrath's testimony is that DANY "simply did not limit the scope of its activities to contractual maintenance," but rather extended its duty to include an obligation to advise SG that the door at the Monsey store needed an APSD. Kral Aff. in Opposition to Motion by DANY ¶ 7. SG apparently argues further that an issue of

fact exists as to whether DANY actually fulfilled this extension of its duty by in fact so advising SG of the need for an APSD. *Id.*

SG's contention that there is an issue of fact is disingenuous. If McGrath's statement indicates that DANY did extend its duties beyond the service activities outlined in the contract, then the statement also indicates that DANY has discharged those duties by informing SG of the need for an APSD. In effect, SG argues that McGrath's statement should be accepted as fact for the proposition that DANY extended the scope of its duty, but that the statement should not be accepted as fact for the proposition that DANY discharged that duty. SG's argument that there is an issue of fact fails, because McGrath's statement shows, if anything, that DANY discharged any duty which it had created to keep its customers apprised of the need for additional safety equipment.

■ SG's final two arguments are easily dismissed. First, SG contends that DANY has a duty because it "could have" been responsible for the installation of the doors. The only support for this argument is testimony by Rogers, an SG employee, that DANY "could have" installed the doors. Rogers's statement on its face is no more than unfounded suspicion and it is insufficient to ward off a summary judgment motion in light of McGrath's testimony that DANY never installed Besam automatic doors.

Second, SG asserts that the accident might have been caused by a faulty repair job. As discussed above, there is no evidence that the doors malfunctioned in anyway whatsoever. Discovery points only to one conclusion: the absence of an APSD was the cause of the accident. Thus this final argument must also be dismissed.

■ There are no issues of fact as to whether DANY breached the contract or a duty of care. Accordingly, DANY's motion for summary judgment is granted. The

---

**2.** Although the copy of the Specifications provided by DANY, *see* McGrath Aff.Ex. D, is addressed to NJAD, this is a standard form and it is the same form upon which the DANY contract was based. McGrath Aff.

counts of strict liability and breach of warranty also are dismissed because the alleged tortious acts of DANY were rendered primarily pursuant to a service contract and were not the acts of one making or selling products. *Stafford v. International Harvester Co.*, 668 F.2d 142 (2d Cir.1981) (citing *Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123 N.E.2d 792 (N.Y 1954)).[3]

### 2. *Besam*

SG alleges counts of strict liability and negligence against Besam, the manufacturer of the door. As manufacturer, Besam sold the door to a distributor, from whom SG then ordered the door. The distributor then delivered and installed the door. Besam was neither the installer nor the supplier of the door to SG. The sole basis for the alleged liability of Besam is that Besam manufactured its automatic doors without a built-in APSD and offered distributors the option of electing to purchase an automatic door without an APSD. The issue is whether Besam exhibited a sufficient degree of care such that it did not act negligently in selling a defectively designed automatic door.

The strict liability counts rest upon a theory of improper design.[4] In New York, "a defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use." *Robinson v. Reed–Prentice Division*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440, 443 (N.Y.1980); *see also Voss v. Black & Decker Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (N.Y. 1983). The negligence standard is whether Besam exercised "reasonable care," which is measured by " 'a balancing of the likelihood of harm and the gravity of the harm if it happens, against the burden of the precaution which would be effective to avoid the harm.' " *Micallef v. Miehle Co.*, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 121, 348

N.E.2d 571, 577 (N.Y.1976) (quoting 2 Harper & James, Torts § 28.4).

It is undisputed that the door was manufactured on or subsequent to February 1, 1981. *See* Besam 3(g) Ex. I (label indicating production date). Besam has established that since October 1980, it has been its practice to include a hold-open beam, a type of APSD, in all "standard door packages." A Besam order form from October 1980 states in capital letters "SAFETY BEAM NOW INCLUDED IN STANDARD PACKAGE." Besam 3(g) Ex. B. SG does not contest that the only way that a Besam automatic door package will leave Besam without a hold-open beam is if the distributer who purchases the package specifically designates on the order form "less hold-open safety beam" in the column entitled "DEDUCTS." *See* Besam 3(g) Ex. C (a distributor's request for exclusion of hold-open beam from automatic door package on "ORDER FORM" dated December 29, 1980).

The undisputed evidence shows that there are several reasons why a distributor would order an automatic door package without the hold-open beam. The hold-open beam is only one of a wide assortment of different types of APSD's. A distributor might have been able to purchase a different type of APSD for a considerably cheaper price than the amount charged for the hold-open beam in the Besam package. In addition, different types of APSD's are more appropriate for different facilities. For instance, Rickel stores use photo-cells rather than a mat because the mat device is damaged by the heavy shopping carts that go through the doors. In addition, there are several manufacturers of APSD's and a distributor might want to purchase a different company's APSD. Besam 3(g) Ex. G. Finally, a distributor ordering an automated door solely for inventory purposes may want to stock up only on doors and not on hold-open beam devices.

Besam also has accompanied this option, of not requesting a hold-open device, with

---

**3.** It is undisputed that New York substantive law governs the case.

**4.** There is no evidence of or contention in SG's affidavits or memoranda of either a mistake in manufacturing or inadequate warning.

notice to the distributors of the importance of including an APSD in all automatic door packages. Besam held conferences with all its distributors in 1980 at which it presented the safety risks of failing to include an APSD in a door package. Also, in January 1982, Besam sent a bulletin to all distributors restating ANSI Standard § 5.3.

SG has brought out no factual basis to support a contention that the door which eventually ended up in the Monsey store did not leave the Besam store in accordance with the system described above. By contrast, Besam has supported its description of its procedures with deposition testimony and exhibits. SG's argument comes down to the contention that Besam is liable simply for manufacturing a door which was installed or ordered without an APSD, even though a hold-open beam was part of the standard package for that type of door.

SG's argument fails because Besam's conduct satisfies both the strict liability and the reasonable care standard. All automatic doors either leave the manufacturer with an APSD or else they are not included at the request of a distributor who is on notice of the importance of including APSD's.

SG contends that despite this evidence, the holding in *Merced v. Auto Pak Co., Inc.*, 533 F.2d 71 (2d Cir.1976), prevents the Court from deciding this issue on summary judgment and that the question of liability is one for the finder of fact. However, this case is more like the recent Supreme Court decision of *Celotex Corp. v. Catrett, supra,* in which summary judgment was appropriate, than it is like *Merced.* In *Merced,* the defendant manufacturer based its defense on the principle that a manufacturer only has a duty to make a device free from latent defects and concealed dangers, as opposed to patent and overt dangers. The Second Circuit ruled that the resolution of the question of whether a danger is latent or patent should have been decided by the jury, rather than on a motion for a directed verdict, because "varying inferences are possible" from the evidence. 533 F.2d at 77 (quoting *Bolm v. Triumph*, 33 N.Y.2d 151, 350 N.Y.S.2d 644, 651, 305

N.E.2d 769, 776 (N.Y.1973)). Here, Besam's defense does not rest on the drawing of a line between latent and patent. The danger was called to purchasers' attention. Varying inferences are not possible from the evidence produced by discovery. *See Anderson v. Liberty Lobby, supra.* In *Merced,* at the time the product left the manufacturer's hands, the product had several dangerous features and was unaccompanied either by notice of the danger or by a device which would cure the danger. *Id.* at 74–75. Unlike the defendant in *Merced,* Besam has come forward with unrebutted evidence of adequate procedures for informing distributors of the danger and of the standard provision of a device to cure that danger. Since there is no evidence in this case that the product posed an unreasonable danger at the time the product left the manufacturer's hands, the issue of whether the danger was latent or patent need not even be reached. Accordingly, summary judgment is granted for Besam.

### 3. *NJAD*

SG maintains that if Besam is not liable for manufacturing the door without a built-in hold-open beam, then Besam's distributor is liable for installing the door without any APSD. This may well be a valid line of reasoning, but first SG must produce some evidence probative of the identity of the distributor who installed the door in the Monsey store. NJAD's Controller, Gail E. Flock (Flock), asserts that NJAD "maintains a store file for *every* individual store that it serves or served"; that it has no file for the Monsey store; and that it has never served the geographical area of Monsey, New York. Flock Aff. (Aug. 25, 1989).

SG attempts to raise an issue of fact with the following pieces of evidence: (1) deposition testimony from another case by a NJAD employee that NJAD has done work in the State of New York; (2) deposition testimony by Rogers of SG that NJAD "could have" installed the doors; (3) a form letter dated July 13, 1982, from NJAD's Operations Manager to Rickels' corporate offices in South Plainfield, New Jersey soliciting business to install APSD's because

"our records reflect that you are a user of automatic sliding doors activated by motion detection devices." Flock Aff.Ex. A (Oct. 17, 1989).[5]

■ The first two pieces of evidence are on their face only grounds for pure speculation and fail to raise an issue of fact. The third piece of evidence also carries no weight because it is only a letter to the corporate headquarters in New Jersey. NJAD readily admits that it did service certain Rickel stores and the letter affirms that admission without raising an issue of fact as to whether NJAD had any relationship with the Monsey store. *See* Flock Aff. (Oct. 17, 1989). Since there are no genuine issues of material fact, the Court grants NJAD summary judgment.

NJAD has also moved for Rule 11 sanctions against SG and DANY for filing, respectively, a third-party complaint and a cross-claim against it. Although the case against NJAD does lack an evidentiary foundation, the Court denies the motion for Rule 11 sanctions because it does not appear that at the time of filing those claims either SG or DANY ever had affirmative knowledge that NJAD did not service the Monsey store.

### Conclusion

The motions for summary judgment against each of SG's third-party claims are granted in their entirety. Consequently, the cross-claims between the third-party defendants are also dismissed.

While the motions between the third-party plaintiff and the third-party defendants have been pending, the attorney for plaintiff Greenspon has submitted an affidavit requesting that the Court grant summary judgment in plaintiff's favor against SG. The affidavit is supported by SG's expert's investigative report and concludes that the materials submitted on the third-party motions provide sufficient grounds for a summary judgment ruling that SG is liable to Greenspon.

Indeed, the materials now before the Court show that Greenspon was in fact in the doorway on September 2, 1987 at the Monsey store and that the door closed on her due to the absence of an APSD in the door. Furthermore, the exhibits show that SG was aware well before September 2, 1987 that the door lacked an APSD and that the absence of such a component presented a serious safety risk. Accordingly, the Court will *sua sponte* grant summary judgment on the issue of liability in favor of Greenspon pursuant to Federal Rule of Civil Procedure 56, unless SG submits papers [6] demonstrating that plaintiff is not entitled to summary judgment within ten days of notice of the entry of this decision. In the event that defendant does not contest the *sua sponte* motion for summary judgment on liability, a pretrial conference will be held on April 25, 1990 at 9:00 A.M. to set a schedule for a trial on damages.

IT IS SO ORDERED.

5. Apparently no records were maintained by SG relating to the construction of the Monsey store.

6. In accordance with the spirit of Rule 56, defendant may also request a hearing on the mo-

tion for summary judgment. Plaintiff also is granted leave to submit papers and request a hearing on the motion for summary judgment.